## NOONAN v. CHESTER PARK ATHLETIC CLUB CO. et al.

(Circuit Court of Appeals, Sixth Circuit. January 2, 1900.)

No. 668.

1. PATENTS — SUIT BY ASSIGNEE AGAINST PATENTEE FOR INFRINGEMENT—EXTENT OF ESTOPPEL BY ASSIGNMENT.

The estoppel created by the assignment of a patent does not prevent the assignor from denying infringement, and, in a suit against him therefor, the court will not assume in favor of the assignee anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent, and will apply to such patent the same rule of construction, with such limitation, which would be applicable between the patentee and a stranger.

2. SAME—CONSTRUCTION OF CLAIMS—EQUIVALENTS.

Where the validity of a patent rests entirely upon the novelty of the specific combination of means to carry the idea of the inventor into practical execution, the means themselves being old, the range of equivalents allowable to the combination must be so narrowed as to include nothing which is not substantially identical with the means used by the patentee. The use of other known means, though equivalent in function, does not constitute infringement.

3. SAME—EQUIVALENT COMBINATIONS.

Where the devise shown by a patent consists of a combination of old elements, it is entitled only to a very limited application of the doctrine of equivalents, and is not infringed by combination of different elements, also old, to accomplish the same purpose, unless the substitutions are merely colorable.

4. SAME—INFRINGEMENT—PLEASURE RAILWAYS.

The Thompson patents, No. 332,762, for improvements in gravity switch-back railways, and No. 367,252, for improvements in elevated gravity and cable railroads, the latter being for an improvement on the structure of the former, which consists mainly in adding a cable as a motive power for carrying the cars up the ascending grades, with a device for automatically releasing them when they start upon a descending grade, when construed and limited as required by the prior art, are neither of them infringed by the electric pleasure railway of the Lilley patent, No. 549,700.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

This is a bill to restrain the infringement of patents No. 332,762 and No. 367,252, both issued to La Marcus A. Thompson. The first is for certain improvements in gravity switch-back railways, and the second is for improvements in elevated gravity and cable railroads. The complainant, Noonan, is the assignee of Thompson of the exclusive right under said patents of a limited territory, which includes the county of Hamilton, in the state of Ohio. The defendants are the Chester Park Athletic Club Company, a corporation of the state of Ohio, La Marcus A. Thompson, the patentee under whom complainant claims, C. M. Lawson, Luke Lilley, and John Devere, all of whom are stockholders and managing officers of the defendant corporation. The defendants denied infringement, and upon this issue the circuit court dismissed the bill, and the complainant appealed.

George J. Murray, for appellant.
W. W. Wood, E. E. Wood, and Thomas L. Pogue, for appellees.

Before TAFT, LURTON, and DAY, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

1. The evidence by which it is sought to connect the defendants Lilley and Devere with the purchase by complainant of an interest under the Thompson patents involved, for the purpose of estopping them, and through them the corporation of which they are members, is insufficient to in any way affect the disposition of any question involved in the case.

2. Thompson, the inventor and assignor of complainant, is the president of the defendant corporation, and is undoubtedly affected by the estoppel growing out of his assignment. Without deciding, we shall, for the purposes of this case, assume that the corporation is affected by the estoppel which prevents Thompson from denying the validity of the patents which he has assigned, and apply to it the same principles which would affect him if he were the sole defendant. It seems to be well settled that the assignor of a patent is estopped from saying his patent is void for want of novelty or utility, or because anticipated by prior inventions. But this estoppel, for manifest reasons, does not prevent him from denying infringement. To determine such an issue, it is admissible to show the state of the art involved, that the court may see what the thing was which was assigned, and thus determine the primary or secondary character of the patent assigned, and the extent to which the doctrine of equivalents may be invoked against an infringer. The court will not assume against an assignor, and in favor of his assignee, anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, and will apply to the patent the same rule of construction, with this limitation, which would be applicable between the patentee and a stranger. Babcock v. Clarkson, 11 C. C. A. 351, 63 Fed. 607; Ball & Socket Fastener Co. v. Ball Glove-Fastening Co., 7 C. C. A. 498, 58 Fed. 818; Cash-Carrier Co. v. Martin, 14 C. C. A. 642, 67 Fed. 786; Chambers v. Crichley, 33 Beav. 374; Construction Co. v. Stormberg (C. C.) 66 Fed. 550; Clark v. Adie, 2 App. Cas. 423, 426. This was the rule applied by the court below, and is the principal ground of objection to the decree finding that the assigned patents, when limited by the previous state of the art, had not been infringed.

3. The defendant Thompson, in 1897, constructed for the complainant an elevated gravity and cable railway, according to the claims of his patent No. 367,252, and assigned to him the exclusive right under that patent, as well as under patent No. 332,762, within three counties in the state of Kentucky and two in the state of Ohio. Subsequently, Thompson, with others, organized the Chester Park Athletic Association, and sought to obtain from the complainant a license to construct and operate a similar railway upon the property of the association which was within the territory assigned to complainant. The parties could not agree upon terms, and thereupon a railway of similar general character and uses was constructed under plans devised by the defendant Luke Lilley, who subsequently applied for and obtained a patent for his structure, being patent No. 549,700, of March 30, 1897. The contention is that this "Lilley Electric Pleasure Railway," as it is styled in the patent to Lilley, infringes the com-

binations covered by the two patents to Thompson so assigned to complainant.

At the time Thompson assigned the patents here involved to the complainant, he was the inventor and patentee under two other patents involving the same general subject-matter, and this fact was known to complainant. These additional patents were No. 310,966, for a roller-coaster structure, and No. 348,796, for a pleasure cable railway. These patents Thompson declined to assign to complainant, though solicited to do so. These two unassigned patents become of material importance when we come to determine the scope of the inventions covered by the two patents which were assigned. The earlier of the two patents assigned is No. 332,762. The claims said to be infringed by the Lilley patent are Nos. 1 and 2, and are as follows:

"(1) In a gravity switch-back railway, the combination, with the trestle-work so constructed as to form a series of descending and ascending planes, of the longitudinal stringers for the reception of the rails, the guardways or stringers for preventing the cars from jumping the tracks, and the brake-sliding ways or stringers, substantially as and for the purposes described.

"(2) In a gravity switch-back railway, the combination, with the undulating trestlework having thereon the longitudinal trackways and rails, of the guard-stringers, and brake-slide stringers contiguous thereto, of a car having brake shoes which engage with said brake stringers through the operation of a lever, substantially as and for the purposes set forth."

The first two of the elements in claim No. 1 are the undulating trestle with longitudinal stringers upon which the rails are mounted. These elements constitute the entire subject of the earliest patent to Thompson, being patent No. 310,966, for a roller-coasting structure. Such structures were not new. Two patents are exhibited covering the same class of pleasure railways,—one to T. Alexander, of December 26, 1882, for an artificial sliding hill, No. 269,554, and another to J. Pusey, for a coasting course, No. 318,026. The other elements in the first claim cover means for stopping and controlling the cars. These elements are guard stringers inside the track rails for preventing the cars from jumping the track, and "brake-sliding ways or stringers" for the car brakes or shoes to slide upon for aiding in the stoppage of the car. The second claim is identical with the first, except that it includes, as another element, "a car having brake shoes which engage with said brake stringers through the operation of a lever."

In both patents No. 310,966 and No. 332,762, gravity alone was relied upon for carrying the cars over the undulating track, and the patents differ from each other only in so far as the later patent provides a means for stopping and controlling the cars and preventing accidents. Devices for stopping railway cars, and for confining them to the fixed track, were confessedly old. Thompson used stringers laid inside the track-rails, so as to leave just space enough for the flange of the wheel, a pair of brake-sliding ways or stringers each abutting the guard stringers, and a rocking brake shoe which engaged these guard stringers. The undulating structure upon which his rails were laid was old. His devices for guarding against derailment and for stopping his cars were, at most, an adaptation of old devices to a new use, or rather to a new combination for new but

analogous purposes. The structure resulting from the combination of elements was one which involved little more than ordinary mechanical skill. All he did was to adapt old things for a special purpose so nearly analogous to the former uses of the same devices as to require little skill in their modification.

His patents must rest upon the novelty of the specific combination of means to carry his idea into practical application. He is not entitled to a monopoly of analogous means found in the old art. Subsequent improvers are equally free to accomplish the same general result by different means, if not purely colorable changes. The range of equivalents allowable to the combination must be so narrowed as to include nothing which is not substantially identical with the means employed by Thompson. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; Wright & Colton Wire-Cloth Co. v. Clinton Wire-Cloth Co., 14 C. C. A. 646, 67 Fed. 790; Wells v. Curtis, 13 C. C. A. 494, 66 Fed. 318.

The appellees use no brake stringers and no inside guard rails, but only the old and well-known form of an outside guard rail commonly used on curves, bridges, and trestles of commercial and street railways. The brakeslide stringers they wholly omit, their brake being the ordinary flat brake directly engaging the track rail. Construed in the light of the old art, defendants do not infringe patent No. 332,762.

4. Patent No. 367,252 is subject to the same limitations growing out of the state of the art. It is for an improvement upon the structure covered by patent No. 332,762. This improvement mainly consists in adding a positively driven cable as a power for carrying the cars up and over the ascending grades, when the car is automatically released, and allowed to pass over the descending grades by gravity alone. A positively driven cable, with appliances for clutching and releasing the cable, was a well-known power used for propelling street cars, and for ascending and descending the tracks of inclined railways. What Thompson did was to adapt that well-known means to the peculiar necessities incident to switch-back railways, so that the cable might be automatically clutched when an ascent was begun, and automatically dropped when a descent was to be made. The novelty consists solely in the means adopted for utilizing the power of the positively driven cable for the purpose of making an ascent, and for automatically dropping it when gravity was to be resorted to.

The fourth claim of the patent is the broadest of those supposed to be infringed. If that is not infringed, none is. That claim is in these words:

"In an elevated gravity and cable railway, the combination with cables and motive power, arranged substantially as described, for propelling the same, of a car provided with a gripping device, and mechanism, substantially as described, for actuating the same, as and for the purposes set forth."

This claim includes, as necessary and indispensable elements, a positively driven cable, and a car provided with appliances for clutching and dropping the cable automatically, both substantially as described. The structure of the appellee includes neither the cable nor the car provided with appliances for seizing and dropping a cable. In

other words, all of the actuating elements of the patent have been omitted, and a wholly different set of instrumentalities have been substituted. The use of a positively driven cable in the operation of vehicles used. upon amusement structures of the class to which all the combinations under consideration belong was not new. The sliding cars described in the Alexander patent for an artificial sliding hill were actuated by a cable. The same power is suggested as a means for carrying such cars up the ascending grades of Pusey's artificial coasting course, patent No. 318,026, and its actual use is shown by Thompson's patent, No. 348,796, for a pleasure cable railway. These uses in the precise art here under consideration would forbid any broad construction of Thompson's adaptation of the power derived from such a positively driven cable in the subsequent patent now under consideration.

The argument of counsel for appellant is that the substitution of the electric motor and proper appliances for using the current on ascending grades, and for cutting it off on descending grades, for the cable and gripping appliances of Thompson's patent, is but the employment of well-known equivalent means for accomplishing the same result, and therefore infringement.

In Burr v. Duryee, 1 Wall. 531–573, 17 L. Ed. 658, Mr. Justice Grier, speaking of a similar mode of argument to show infringement, said:

"The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term 'equivalent.' Without attempting to define this abstract term by other abstract terms, we may give examples which will best show its application to machines, as, where a simple lever is used in one, and the other substitutes a cam, or toggle joint, or wedge for a cam, and many other cases where one mechanical power is substituted for another in a machine. In the case of McCormick v. Talcott, 20 How. 405, 15 L. Ed. 931, we have said: 'If the invention claimed be itself but an improvement on a known machine by a mere change of form or combination of parts, the patentee cannot treat another as an infringer who has improved the original machine by use of a different form, or combination performing the same functions. The inventor of the first improvement cannot invoke the doctrine of equivalents to suppress all other improvements which are not colorable invasions of the first.' But it has been argued that, though not a colorable invasion of the patentee's claim, it is an evasion of his patent, which is equally injurious. If so, it is damnum absque injuria. Every man has a right to make an improvement in a machine, and evade a previous patent, provided he does not invade the rights of the patentee."

If the structure resulting from the combination of old elements included in this fourth claim of the Thompson patent was an invention of primary character, so as to entitle the patent to a generous application of the doctrine of equivalents, there might be room to say that the substitution of the electric motor with the appliances necessary for the control of the electric current for the positively driven cable, with its peculiar clutching mechanism, would be but the use of means which, in the propulsion of street cars, were well-known equivalents for each other. But the Thompson patent is not entitled to a broad construction, nor to a liberal application of the doctrine of equivalents. In addition to the omission of the cable and essential gripping devices, the defendant's adoption of the electric motor involved

certain necessary structural changes in the general plan of its railway. Grades possible in a cable and gravity railway were not practical in an electric and gravity railway. A grade of 5 or 6 per cent. was the limit practical in a structure where the ascents were to be made through the power derived from a motor. This required Lilley to use towers at certain intervals, up which, by a winding railway, his cars were carried, in order to attain a height sufficient to give them the necessary velocity to carry them down the undulating descending grades to the foot of the next ascending grade. This substitution of the electric motor for the positively driven cable of the Thompson patent, and the structural changes necessary to utilize the motor, involved something more than colorable alterations, and implied inventiveness quite as marked as that which distinguished Thompson's gravity and cable railway from his earlier pleasure cable railway. Thompson's patent, No. 367,252, when properly construed and limited, as required by the history of the art, is not infringed by the structure of the defendant, and the decree of the circuit court is affirmed.