SIMMONS MFG. CO. v. SOUTHERN SPRING BED CO. et al.

(Circuit Court of Appeals, Fifth Circuit. October 2, 1905.)

No. 1,392.

PATENTS—INFRINGEMENT—SPRING BED.

   The Gail patent, No. 639,222, for improvements in spring bed and seat bottoms, conceding it to disclose patentable invention, is for an improvement merely in an existing and well-advanced art, by a new and slightly different combination of old elements, and is entitled only to a narrow and strict construction, limiting it to the exact device shown. As so construed, it is not infringed by the device of Haas & Crow patent, No. 745,345.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

For opinion below, see 131 Fed. 278.

Phillip C. Dyrenforth (Wm. S. Thompson, on the brief), for appellant.

Hoke Smith (Lee. M. Jordan, on the brief), for appellees.

Before SHELBY, Circuit Judge, and NEWMAN and MEEK, District Judges.

MEEK, District Judge. This is an appeal from a decree dismissing the bill of appellant, Simmons Manufacturing Company, brought for the infringement of letters patent No. 639,222, for improvements in spring bed and seat bottoms, issued on the 19th day of December, 1899, to the appellant company as assignee of John F. Gail. The device by which the alleged infringement was effected was constructed in accordance with the description contained in letters patent No. 745,-345, issued to Isaac H. Haas and John W. Crow. The Gail patent was issued for a combination of elements entering into the construction of spring beds, as was the patent to Haas and Crow.

The serious issue in this case is whether or not the combination used by appellee is an infringement upon that claimed by appellant. The validity of appellant's patent is attacked on the ground of want of invention, but, if it should be determined there was no infringement, a discussion of the validity of appellant's patent would be unnecessary. An examination of the prior state of the art relating to spring beds reveals that it was old and well advanced at the time of the appearance of appellant's device. Gail brought together in combination elements that were old and familiar in the art of spring bed making. Analysis of the combination entering into his bed springs, and a comparison with others anticipatory, disclose that he has not produced a device of such novelty and importance as to mark a distinct advance in the progress of the art, but that, if he is to be credited with invention at all, it is for mere improvement, for but a single step in an existing and well-known art. Therefore, in considering the question of infringement of his patent by the use of an alleged mechanical equivalent, he is not entitled to a broad and liberal construction as for a pioneer or primary invention.

In National Hollow Brake Beam Company et al. v. Interchangeable Brake Beam Co., 106 Fed. 710, 45 C. C. A. 561, Judge Sanborn says:

"One who invents and secures a patent for a machine or combination which first performs a useful function is thereby protected against all machines and combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes or mere colorable evasions thereof. In other words, the term 'mechanical equivalent,' when applied to the interpretation of a pioneer patent, has a broad and generous signification, while its meaning is very narrow and limited when it conditions the construction of a patent for a slight and almost immaterial improvement."

This is a clear and concise expression of the rule as it is found in the authorities. Just how limited and restricted a construction the Gail patent should be given under the law will be developed from a consideration of the state of the art and what he did for it.

Figures of the respective spring beds of the parties are shown by the two drawings, the first of which is appellant's combination; the second, appellees'.

These figures are a top plan of the two devices, and show the relative arrangement of the spiral springs and the two sets of connecting wires, by means of which the springs are placed and held in position.

In appellant's drawings, A designates a rectangular frame. Within this frame are secured a series of springs, B, B, arranged in rows with their upper ends or faces forming rings and being approximately in the plane of the frame, A. These springs are held in their proper relation to the frame and to each other by two sets of rods, C, D. Each of the tie-rods, C, is formed from a single rod so as to comprise a series of body portions and intermediate loops; the latter engaging the top rings of two adjacent springs. The key-rods, D, are arranged at right angles to the tie-rods, C. These are straight, and extend centrally over the longitudinal rows of springs, B, and beneath the vertical part of each loop, C, in the row of springs traversed by the key-rod. While there are a number of modifications shown and claimed in appellant's patent, the foregoing figure shows the preferred construction, and embodies the essential elements of the combination. All the drawings, specifications, and claims contemplate the bending of the loops of the tie-rod, C, so that they may be passed vertically through the plane of the top coil of the adjacent spring for the engagement of the key-rod. The Gail claims, 15 in number, relate to the combination of the springs and the two sets of rods and to the combination with the springs and two sets of rods of the inclosing frame.

In appellees' drawing, b,² a portion of the upper coil, is shown to be

deflected out of the plane of the coil, b. The key-rod, c, passes through the loop or eye thus formed. The lateral loops, d, of appellees' tie-rods, are all in the same plane, having no vertical part to engage the key-rods. In the appellant's structure, the tie-rod is deflected to receive the key-rod, while in appellees' structure the top coil of the spring is deflected to receive it. Appellant contends appellees' structure is the mechanical equivalent of appellant's and that the deflection of the plane of the top coil of the spring, instead of the vertical deflection of the tie-rod to receive the key-rod, is a mere colorable evasion of appellant's claim.

· The admissions and proof show that the rectangular frame and form of springs used by Gail were old. The proofs show the tie-rods of Gail to have been anticipated in a patent to P. H. Mellon, in 1885. Mellon's improvement in spring beds consisted in a tie-rod running the length or breadth of the bed, the ends of which were made fast to the frame, and which had straight portions between the springs and V-shaped loops formed with hooped portions; the loops being passed through the top coil of one row of springs, and their hooks engaging the top coil of an adjacent row of springs. The sole difference between the Mellon tie-rod and Gail's is that Mellon's V-shaped loop is bent around the top coil of the adjacent spring to engage it, while Gail's loop is not bent around, but, passing through the plane of the top coil, is left in a perpendicular position for the reception of the key-rod. The key-rod of Gail was anticipated in a patent to R. S. McEntire, in 1881, and in a patent to A. F. Purefoy, in 1890. The Purefoy patent also shows the Gail tie-rod in a modified form.

The history of the Gail application in the Patent Office sheds light upon the prior state of the art, and reveals in what a narrow compass he labored. His original application contained 17 claims. The file wrapper shows they were acted upon by the examiner, as follows:

"Claims 1 to 10, inclusive, and 12, are rejected upon the patent to Mellon, No. 331,523, December 1, 1885, in connection with the patent to McEntire, No. 240,743, April 26, 1881, bed bottoms of springs. The patent to Mellon shows the frame, springs, and tie-rods having integral loops extending through two rings. The patent to McEntire shows a tie-rod having loops which connect adjacent springs, which is considered the equivalent of applicant's tie-rod, and a key-rod passing across the springs and through the loops of the tie-rod. There is believed to be no invention either in using the key-rod shown by McEntire with the tie-rods shown by Mellon, or in substituting the tie-rods shown by Mellon for the tie-rod shown by McEntire. It is considered immaterial whether the bead, C2, of applicant's loop passes through the ring of the adjacent spring from below or from above, but the patent to Bone, No. 582,895, May 18, 1897, Bed Bottoms of Springs, is cited to show a loop of this character passing through the ring of a spring from below, as claimed in certain of the claims. Claims 11, 13, 14, 15, and 16 are rejected upon Mellon, cited. Claim 17 is rejected upon the patents to Mellon and McEntire, cited; the bends, d, claimed therein, not conferring patentability thereon, being a common expedient and shown, for instance, in the patent to Laycock, No. 600,919, March 22, 1898, Bed Bottoms of Springs."

Subsequent amendment of some of the claims and substitution of others, together with the submission of argument, resulted in the allowance of the patent, with 15 claims, by the Patent Office. It is deemed unnecessary to go into the amendments further than to say

they result in slightly narrowing the construction of a majority of the claims. In the argument, in support of the application and the amendments, the file wrapper discloses the following:

"Applicant has made a combination of three elements, viz., spiral springs, tie-rods, and key-rods, in an entirely new manner. These three parts are so formed as to require mutual co-operation to secure them in position in the finished structure. No two of these elements are secure independently of the third. There is nothing made a part of the spring adapted to extend to and make engagement with one of the other elements, and the tie-rod with its loops does not of itself grasp the springs. If the key-rod were not present to bind or lock with the tie-rod and spring, the tie-rod and spring would fall apart."

This structural arrangement or mechanism is found in the Purefoy patent, No. 440,324, of 1890. In this, as in the patent in suit, no two of the elements are secured independently of the third. There is nothing made a part of the spring adapted to extend to and make engagement with one of the other elements, and the tie-rod, with its loops, does not of itself grasp the spring. If the key-rod were not present to bind or lock the tie-rod and spring, the tie-rod and spring would fall apart. This is also the structural arrangement in the patent to T. A. Stoll for a spring bed bottom, No. 530,248, of 1894.

From this review of the state of the art it will be seen that in 1899 Gail had been anticipated, not only in all the elements that entered into the construction of his device, but also in a slightly modified form, in its very mechanism. Having the frame, the form of spiral spring, the tie-rod of Mellon, the key-rod of McEntyre, and the mechanism of Purefoy and Stoll, it is questionable whether the creation of the Gail device involved the exercise of inventive genius or whether it was merely the result of ordinary mechanical skill, operating through the processes of reason on known and familiar principles and elements. It is at least manifest that the patent on the Gail device should be narrowly and strictly construed, and that, in the language of the learned judge who tried this case below, the appellant is entitled to "a patent only for exactly what Gail put together, in the way he put it together."

Judge Lurton, in the course of his opinion in Noonan v. Chester Park Athletic Club, 99 Fed. 90, 39 C. C. A. 426, says:

"The structure resulting from the combination of elements was one which involved little more than ordinary mechanical skill. * * * His patents must rest upon the novelty of the specific combination of means to carry his idea into practical application. He is not entitled to a monopoly of analogous means found in the old art. Subsequent improvers are equally free to accomplish the same general result by different means, if not purely colorable changes. The range of equivalents allowable to the combination must be so narrowed as to include nothing which is not substantially identical with the means employed by Thompson. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; Wright & Colton Wire Cloth Co. v. Clinton Wire Cloth Co., 14 C. C. A. 646, 67 Fed. 790; Wells v. Curtis, 13 C. C. A. 494, 66 Fed. 318."

Appellees' device is not described, specified, or claimed in appellant's patent, though the possible modifications of the combination are exhaustively covered in the drawings and the 15 claims. Nor is appellees' device substantially identical with that of appellant. Mechanically considered, it is true the degree of difference is small, consisting

as it does of the transfer of the eye or loop for the reception of the key-rod from the tie-rod to the upper coil of the spring. But this slight change of construction alters the form and function, respectively, of the spring and tie-rod. The vertical loop formed in the upper coil, passing through the flat loop of the tie-rod, serves to prevent the rotation of the spring upon its vertical axis. The locking of the spring is thereby a little more secure and complete than in complainant's device. This method of locking also tends to lessen the noise resulting from use of the spring bed. We conclude the difference between the two devices to be substantial, and not merely colorable, and therefore there was no infringement.

With the trial judge, we are of opinion this conclusion finds full authority in the case of Singer Manufacturing Company v. Cramer, 192 U. S. 265, 24 Sup. Ct. 291, 48 L. Ed. 437.

The action of the trial court in dismissing the bill will be affirmed.