SIMMONS MFG. CO. v. KINNEY-RODIER CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 23, 1915.  Rehearing Denied May 25, 1915.)

No. 2118.

PATENTS ⬤⇒328—INVENTION—BED SPRING.

    The Gail patent, No. 639,223, for a bed spring, *held* void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by the Simmons Manufacturing Company against the Kinney-Rodier Company, Frank W. Kinney, and F. E. Williams. Decree for defendants, and complainant appeals.  Affirmed.

Complainant, assignee of John F. Gail, the grantee in letters patent 639,223 for "Improvements in Spring Beds and Seat Bottoms," filed its bill charging defendants with infringement.  The court below held the patent void, and this appeal is from a decree dismissing the bill.

For opinion below, see 206 Fed. 68.

Albert H. Graves and Charles K. Offield, both of Chicago, Ill., for appellant.

George P. Fisher, of Chicago, Ill., for appellees.

Before BAKER and SEAMAN, Circuit Judges, and GEIGER, District Judge.

GEIGER, District Judge.  Gail's improvement relates to bed bottoms formed by using vertically disposed spiral springs extending in rows in which they are held within and upon a frame by wire tie and keyrods.  The patent has been before the courts (Simmons Manufacturing Company v. Southern Spring Bed Co. [C. C.] 131 Fed. 278; Id. [C. C. A., Fifth Circuit], 140 Fed. 606, 72 C. C. A. 174) in which latter volume may be found a description and an illustration of the structure.  These courts, trial and appellate, while strongly intimating invalidity, relieved the defendant therein from the charge of infringement.  The present case, while the issues are likewise validity and infringement, really narrows to the consideration of the patent in the light of a prior art structure—not a reference in the adjudged case noted—and presents the one question whether, upon such reference, in connection with certain prior patents, the patent in suit can be saved by a limitation of its fundamental claim.  The latter reads thus:

    "The combination of spiral springs having their ends formed into rings, single parallel tie-rods extending across said springs and bearing lateral loops extending upward through the rings of one row of springs and laterally across and vertically through the adjacent rings of the adjacent row of springs, and key-rods arranged transversely to the said tie-rods and extending midway along rows of springs and through said loops where the latter extend through the springs, substantially as shown and described."

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The three essential elements of the claim are the spiral springs, the tie-rods with the lateral loops, the key-rods. A better understanding of the question now presented may be had upon reference to one of the figures of the patent:

*Fig. 3.*

In this, a representation of a portion of a bed spring, *B*, represents the upper ring of the spirally disposed spring, *C*, the tie-rod with the lateral loops, *C'C'DDD*, the key-rods which cross the tie-rods and intercept the lateral loops at $C^2C^2$, where they reach around the rings of the spring.

The proofs establish, to the requisite degree of certainty, that on April 6, 1897, one Tinkham filed an application in the Patent Office for a patent upon an improved spring bed, which, however, was not prosecuted, in fact was abandoned because of rejection by the office of the claims made, that as early as 1896 a corporation, whereof he was president, began to manufacture and sell a spring bed embodying the invention thus claimed but rejected, and that such sale and manufacture continued down to the present time. Consideration of the claims made by Tinkham in his patent application is not now necessary; but, respecting the structure made and sold, as stated, it appears, not only upon comparison of the two, but also upon the concession of complainant, that it responds literally to the claim of the Gail structure. This one difference is disclosed: Tinkham's spiral springs are in closer proximity to each other, as a result whereof the lateral loops, instead of being elongated, forming a sort of link, are more nearly a "twist" through which, with the transverse key-rod, the adjacent rings are held in position. Therefore, in order to avoid this reference, complainant urges that Gail's claim should be interpreted and limited to embody an elongated lateral loop as disclosed in his drawing.

We believe these considerations to be fatal to such contention: (1) No suggestion is contained in Gail's claims or specifications that the

length of the lateral loop was deemed of essence in the invention. (2) The Patent Office history of the patent suggests breadth of a combination claim rather than unexpressed limitations. (3) The practical art forbids such limitation. The necessity for any limitation is not now suggested as an aid to interpretation, nor to give effect to what, on the face of the patent, might otherwise appear to be an inoperative structure; nor to give effect to what, in view of the art, appears to be a clear forward step to be dignified as invention, but solely to avoid the Tinkham structure wherein the loop is not elongated. Now, it may be true that complainant, in its commercial structure, has hit upon an elongation of the loop which gives the most satisfactory degree of resilience; but it cannot credit Gail as its teacher in that particular; and the court, if a limitation were now to be injected, would be obliged, arbitrarily, to find it outside of the patent. But, as noted, the practical—and for that matter the paper art—forbids such a limitation. No one has urged a hard and fast rule as to the number of spiral springs to be used in a spring bed structure, nor their relative proximity; and until such rule is incorporated into a structure which can be said to be the last stroke of inventive genius in this particular art, there can be no claim of invention in the use of a loop which, because of the length in fact adopted, seems to promote the structure commercially.

There is, however, this further conclusive answer to complainant's contention: In none of the many prior art structures is the length of the loop or of the tie-rod space between the spirals asserted or suggested to be an essential feature of the invention. Mellon, patent No. 331,523, December 1, 1885, uses a tying loop which, from his drawing, appears to have the same elongation as Gail's; but whether any particular length was essential is a matter upon which his specification and claims are just as silent as is Gail. Hence Gail really seeks an adjudication whose effect must be to avoid the Tinkham structure, because its loop is shorter. But, to be of avail as against Mellon, such adjudication must also be to the effect that the latter does not anticipate because his loop is either longer or shorter than Gail's. This cannot be done. Defendant's structure is like complainant's; but its permissible contention that the elongated loop is used upon Mellon's, and not Gail's, teaching is unanswerable. Therefore, even if the Tinkham structure be avoided, and reference be had to the key-rods of Purefoy, patent 458,067, and the Mellon tie-rod (with respect to elongation of the loop) and the Tinkham structure (with respect to the style, not elongation, of the loop), a plain defense of lack of invention in view of those prior structures is established by the defendant.

The decree is affirmed.