WHITNEY v. NEW YORK SCAFFOLDING CO.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1917. Rehearing Denied May 16, 1917.)

No. 4766.

1. PATENTS ⟨=⟩328—CONTRIBUTORY INFRINGEMENT—SCAFFOLD.
    The manufacture and sale of the hoisting device of the Whitney patent, No. 1,114,832, *held* on the evidence not to constitute contributory infringement of the Henderson patent, No. 959,008, for a scaffold.

2. PATENTS ⟨=⟩259—CONTRIBUTORY INFRINGEMENT—INTENTION.
    The question in contributory infringement is whether or not the defendant made or sold his machine or improvement with the intent or purpose of aiding another in the unlawful making, selling, or using of a third person's patented invention, and the burden is on the plaintiff to establish the affirmative of this issue.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 400–402.]

3. PATENTS ⟨=⟩237—INFRINGEMENT—"MECHANICAL EQUIVALENT."
    The term "mechanical equivalent," when applied to the interpretation of a pioneer patent, has a broad and generous signification, while its

⟨=⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

meaning is very narrow and limited when it conditions the construction of a patent for slight improvement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 374, 375.

For other definitions, see Words and Phrases, First and Second Series, Mechanical Equivalent.]

4. PATENTS ☜165—CONSTRUCTION—LIMITATION OF CLAIMS.
Where an inventor has pointed out and claimed in his patent the combination or improvement he claims as his invention, he disclaims and dedicates to the public any other combination or improvement apparent from his specification and claims, not a mere evasion of his own.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241.]

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Suit by the New York Scaffolding Company against Egbert Whitney. From an order granting an interlocutory injunction, defendant appeals. Reversed.

See, also, 224 Fed. 452, 140 C. C. A. 138.

Robert H. Parkinson, of Chicago, Ill. (Wallace R. Lane and George Mankle, both of Chicago, Ill., on the brief), for appellant.

C. P. Goepel, of New York City, and Paul Bakewell, of St. Louis, Mo., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. This is an appeal from an interlocutory decree based on letters patent No. 959,008 to E. H. Henderson, which enjoins Whitney, the defendant below, from manufacturing or selling scaffold hoisting devices like those shown in patent No. 1,114,832 issued to Whitney on October 27, 1914, on the ground that such manufacture and sale constituted contributory infringement of Claims 1 and 3 of the former patent, which read in this way:

"1. A scaffold consisting in the combination of crossbeams, floor pieces extending between such beams, and a hoisting device associated with each end of each beam, each hoisting device consisting of a continuous U-shaped metal bar extending around the under side of and upward from the associated beam, and a hoisting drum rotatably supported by the side members of such bar."

"3. A scaffold consisting of a plurality of U-shaped bars arranged in pairs, a crossbeam laid in and extending between each pair of such U-shaped bars, a floor laid upon said cross-beam, a drum rotatably supported between the upwardly extending side members of each of said U-shaped bars, and means for controlling the rotation of said drum."

This suit was originally brought against Whitney for an infringement of these claims by the manufacture and sale of hoisting machines like those described in letters patent No. 998,270 issued to him on July 18, 1911. In those machines Whitney used for his hoisting frames metal bars bent in the form of the inverted letter "U," hoisting drums rotatably supported on brackets on the vertical side members of the U-shaped bars, supporting rods of metal connected with and securely fastened to the lower ends of the vertical side members of

his U-shaped frames, upon which rods he supported crosspieces or putlogs upon which the planks or sheeting of the scaffold rested without fastening in any way the crosspieces or putlogs to the lower bars of the frames upon which they rested. This court was of the opinion that the making and selling of these machines by Whitney for use by third parties in combination with the crossbeams and floor pieces of the combinations of Claims 1 and 3 of Henderson's patent constituted an infringement of the latter, and it accordingly directed the issue of an injunction against their manufacture and sale by Whitney. New York Scaffolding Co. v. Whitney, 224 Fed. 452, 460, 463, 140 C. C. A. 138, 146, 149.

[1] After the court below had issued its injunction pursuant to that opinion, the scaffolding company made a motion in this case in the District Court for a similar injunction against the manufacture and sale by Whitney of hoisting machines like that portrayed in his patent No. 1,114,832. The latter machines were called by Whitney, and were known in the trade, as the "Little Wonder Machines," and for convenience they will be so styled, and the machines like that described in Whitney's patent, No. 998,270, will be called Whitney's first machines in this opinion.

The Little Wonder machine consisted of a rectangular frame and a hoisting device. The frame was made of two vertical metal side rods, which were connected by two metal bars fastened to the side rods, one at the top and the other at the bottom of the frame. Each of these bars was perforated by three holes, one at each end, through which the side bars respectively passed and in which they are fastened by nuts, and one in the center through which the steel wire cable suspending from above and bearing the frame, hoisting device, and scaffold passes and works. The hoisting device consists of two automatic clutches "adapted to engage a suspending cable, means for holding the clutches constantly in vertical alinement and for carrying a load suspended therefrom, means for working the clutches repetitiously toward and from each other in such alinement upon the cable, and means for releasing the clutches severally." These clutches are located in two alining clutch boxes, each box has a vertical peripheral split tubular wall, formed in duplicate wall sections marginally contacting with each other. Each box has a cap fitted over the top of its tubular wall and an inverted cap fitted under the bottom of its tubular wall. By means of these caps which are perforated in the center for the movement of the suspending cable, the wall sections are held together, and by means of terminal perforations in the caps for the vertical side rods of the frame the upper box is held in rigid engagement and the lower box in sliding engagement with the vertical side rods. Two duplicate vertically disposed semitubular jaws in each box mounted on springs, registering with each other face to face, held in position by transverse sliding arms working in transverse slots as the jaws approach to and recede from each other, but movable vertically in unison between anti-friction rollers interposed between the walls of the box and the jaws, constitute the clutch. The jaws have internal rib-like teeth to bite the cable which passes between them, and

each jaw has an external wedge-like projection on its back to produce and release the bite as the clutch is made to rise and, fall in the box. When in their normal position both clutches grip and hold the suspending cable. The lower clutch, whose box has a sliding engagement with the side rods of the frame, is movable vertically by means of a lever. To raise the load a workman first lifts the free end of the lever, thereby releasing and raising the lower clutch box, and then forces down the lever, thereby bringing the lower clutch into action and releasing and lifting the upper clutch from which the load is suspended. By thus raising and lowering the lever, like a pump handle, he causes the machine with its load, the scaffold frame and hoisting machine, to climb the cable much as a sailor climbs a rope. The first and third claims of patent No. 1,114,832 describe very well the Little Wonder and, when compared with the first and the third claims of Henderson's patent and with Whitney's first machine, which has the U-shaped bar and the hoisting drum and means for operating it rotatably supported between the side members thereof, illustrate the similarities and differences between the Little Wonder and Henderson's machines and Whitney's first machine. Those claims read in this way:

"1. A hoisting machine of the specified class, comprising two automatic clutches adapted to grip alternatively a suspending cable, means for raising and lowering the clutches independently on the cable, and a suspended frame, upheld by the clutches alternately and provided with means for holding both clutches in vertical alinement."

"3. A hoisting machine of the specified class, comprising two automatic clutches, means for holding the clutches in vertical alinement and for carrying a suspended load, means for moving the clutches toward and from each other in such alinement, and means for releasing the clutches severally; each clutch having two coacting, spring-mounted, vertical wedge jaws between antifriction rollers, and being adapted to grip automatically a suspending cable and to be released from that cable."

On the argument at the former hearing in this court of the question of the validity of Henderson's patent and its infringement by Whitney's first machine, counsel for Whitney contended that Henderson's patent was anticipated by letters patent No. 854,959, issued to W. J. Murray on May 28, 1907, which disclosed an inverted U-shaped metal bar, a hoisting drum rotatably supported by the side members of this bar, and a crosspiece or putlog securely fastened to the lower ends of the side members of the U-shaped bar upon which putlog the planks or sheeting of the scaffold rested. Murray, however, had portrayed the members of the pairs of his machines set opposite each other for supporting a wide mason's scaffold with their edges to the wall of the building, with the lower ends of the side members of each pair securely fastened to the same crosspiece or putlog, so that neither of the machines could be knocked down for removal without removing the bolts, or rivets, or nuts, by which it was fastened to the crosspiece or putlog, and so that neither of them could be set up again without again fastening the side members of its frame thereto, nor could these machines without new or different crosspieces or putlogs be used broadside to the building—while the machines of Henderson

were fitted for use with their broadsides to the wall of the building. When Henderson's application for a patent was in the Patent Office, it was twice rejected on Murray's patent and was finally allowed on the argument of counsel that Claim 1 specified that the U-shaped metal bar extended around the under side of the crossbeam or putlog, so that the connection between the U-shaped bar and the crossbeam was absolute and positive, "and no connecting rivets or bolts or other auxiliary means" were employed. The majority of this court were of the opinion that Henderson's method of supporting his crosspieces or putlogs on the lower part of his frame without fastening them thereto so that his hoisting machines could be knocked down and set up again without removing or placing bolts, rivets, or nuts, and so that his machines were fitted for use broadsides to the building, permitted his patent to escape anticipation by Murray's and placed him in that large class of inventors who make slight advances in their art and accomplish the result sought with varying degrees of success, so that on that account each is entitled to his own combination or device as long as it differs from those of his competitors and does not include theirs. 224 Fed. 458, 140 C. C. A. 138. As Whitney's first machine embodied an inverted U-shaped bar, a drum, and means for operating it rotatably supported on brackets upon the side members of his bar, a metal rod fastened to the lower ends of the bar on which rod the crosspieces or putlogs might rest without fastenings, and as it was thus constructed so as to fit it for use broadside to the building, its manufacture and sale for use in Henderson's combinations was held to constitute contributory infringement and was enjoined. Does Whitney's manufacture and sale of the Little Wonder constitute a like infringement of the patent to Henderson and entitle the plaintiff to a like injunction?

1. It was indispensable to proof of such infringement that there should be substantial evidence that Whitney made and sold hoisting machines of the type of the Little Wonder with the intent or for the purpose of aiding others in the unlawful making, selling, or using of the patented invention of Henderson. There is no evidence in this case that Whitney ever made or sold a hoisting machine of the type of the Little Wonder which was fitted for or intended by him for use with an unfastened putlog. All the witnesses who disclosed knowledge of the method of construction of the Little Wonders that Whitney had put out testified that the putlogs in them which they observed had two holes in each of their ends at right angles to the length of the putlogs through which the vertical side bars of the rectangular frame of the Little Wonder passed, so that beneath these putlogs the lower bars of the frames of the Little Wonder, through holes in which the side bars extended, could be fastened in their places by nuts beneath them on the lower ends of the side bars. It is true that the witnesses testified that the holes in the putlogs were large enough to permit them to be held in yielding connection with the side bars. But the material, the controlling fact here, is not that they were fastened in their places on the side bars loosely, but that by means of the crossbars of the frames beneath them through which the side bars

extended, and by means of the nuts on the side bars beneath the cross-bars under the putlogs, the putlogs were securely fastened in their places so that the machines could not be knocked down without removing, or set up without fastening together putlogs, crossbars, and side bars in the manner which has been described. The fact that the ends of the putlogs were perforated for the side bars with two holes at right angles to the length of the putlogs shows that they were made and fitted for use in a hoisting machine suspended edgewise and not broadside to the building, and that the putlogs were made and fitted to be securely fastened, when in use, to the side bars of the frames, and not to be placed on the lower bars or parts of the frames without any fastening. And as, even in the case of a hoisting machine consisting of a U-shaped frame and a drum and means for its operation rotatably supported upon the vertical sides thereof, the freedom of the putlog, when in use, from any fastening, and the intended use of the machine broadside to the wall, were deemed essential to infringement, the evidence in this case fails to convince that Whitney ever had any intent or purpose to make or sell the Little Wonders to aid any one in perpetrating such infringement. The testimony of one or two witnesses that the bottom bars of the Little Wonders were capable of supporting putlogs that were not fastened thereto fails to shake this conclusion, in the face of the fact that all the evidence is that all the lower bars and all the putlogs sufficiently observed by the witnesses to enable them to state whether or not they were fitted to be fastened or were fastened, shows that the putlogs were perforated for this purpose, and that those in use were securely fastened by means of the holes in them, the bottom bars of the frame, and the nuts beneath them to the side bars of the frames.

[2] The question in contributory infringement is whether or not the defendant made or sold his machine or improvement with the intent or purpose of aiding another in the unlawful making, selling, or using of a third person's patented invention. The burden is on the plaintiff to establish the affirmative of this issue. The facts that the plaintiff's machine or device is capable of use in such a way as to aid in the infringement of the patented invention, that it has been used in that way, that the defendant knew it had been so used and still continued to manufacture and sell it, and that he fitted it for such use, are competent evidence of such an intention or purpose. But the mere fact that it is capable of such a use, when it is at the same time capable and fitted for a rightful and innocent use, is not sufficient to establish such an intention or purpose where, as in this case, the evidence is that the machine and its parts were expressly fitted for use in a rightful way without aiding in any such infringement, and there is no evidence that the defendant ever knew of the use of the machine, or that it ever was sold or used in such a way as to aid others in infringing the patented invention.

2. There are, however, other reasons why Whitney's manufacture and sale of the Little Wonders failed to constitute an infringement of the patented combinations of Henderson. Henderson's patent is not for a new machine or device. It is for a new combination of old me-

chanical elements. The first claim is for a combination of (1) cross-beams and floor pieces of a scaffold, with (2) a hoisting device consisting of a continuous U-shaped metal bar extending around the under side of and upward from the associated beam, and a hoisting drum rotably supported by the side members of such bar. The third claim is for a combination of (1) a plurality of U-shaped bars arranged in pairs, (2) a crossbeam laid in and extending between each pair of U-shaped bars, (3) a floor laid upon said crossbars with (4) a drum rotably supported between. the upwardly extending side members of each of the U-shaped bars, and (5) means for controlling the rotation of the drum.

[3] The absence of a single material mechanical element of a patented combination from the machine or combination that is alleged to infringe it is fatal to the claim of infringement. Two of the essential elements of the combinations of the first and third claims of Henderson's patent, the U-shaped bar and the drum rotatably supported between the side members of the frame, are absent from the Little Wonder, although they were both present in Whitney's first machine. In opposition to this view of this case, counsel argue that the rectangular frame of the Little Wonder built up out of two side bars and two end bars fastened together is the mechanical equivalent of the U-shaped bar of Henderson, and that the clutch mechanism which has been described is the mechanical equivalent of the drum and the means of operating it rotatably supported on the side members of the frame of Henderson. But the breadth of the signification of the term "mechanical equivalent" is proportioned in each case to the extent and character of the advance or invention evidenced by the patent under consideration. One who invents and secures a patent for a machine or combination which first performs a useful function is thereby protected against all machines and combinations which perform the same function by equivalent mechanical devices, but one who merely makes and secures a patent for a slight improvement on an old device or combination which performs the same function before as after the improvement is protected against those only who use the very device or improvement he describes, or mere colorable evasions thereof. In other words, the term "mechanical equivalent," when applied to the interpretation of a pioneer patent, has a broad and generous signification, while its meaning is very narrow and limited when it conditions the construction of a patent for a slight improvement. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 710, 45 C. C. A. 544, 561; Yancey v. Enright, 230 Fed. 641, 644, 145 C. C. A. 51; Mallon v. Wm. C. Gregg & Co., 137 Fed. 68, 78, 69 C. C. A. 48, 58; James Heckin Co. v. Baker, 138 Fed. 63, 65–66, 70 C. C. A. 559, 561–562; International Mfg. Co. v. H. F. Brammer Mfg. Co., 138 Fed. 396, 398, 399, 71 C. C. A. 633, 635–636; Simmons Mfg. Co. v. Southern Spring Bed Co., 140 Fed. 606, 607, 72 C. C. A. 174, 175; Columbia Wire Co. v. Kokomo Steel & Wire Co., 143 Fed. 116, 121, 74 C. C. A. 310, 315; Dunlap v. Willbrandt Surgical Mfg. Co., 151 Fed. 223, 227, 80 C. C. A. 575, 579; Maunula v. Sunell (C. C.) 155 Fed. 535, 541; Union Match Co. v. Diamond Match Co., 162 Fed. 148, 155, 89 C. C. A. 172, 179. The patent to Henderson falls far

within the second class. His was not a pioneer invention. His improvement was too narrow and limited to entitle it to protection by such a breadth of signification of the term "mechanical equivalent" as would make the rectangular frame built up out of four separate bars and the complicated clutch mechanism of the Little Wonder the mechanical equivalent of Henderson's U-shaped bar, the drum and the means of operating it rotatably supported on the side members of his bar. The application of a meaning of this term much more restricted would render the patent to Henderson void, for his hoisting machine with the U-shaped bar and the drum rotatably supported on its side bars as described in Murray's patent is much nearer to the mechanical equivalent of Murray's device than the Little Wonder with its rectangular frame built out of four separate bars and its complicated clutch mechanism is to the mechanical equivalent of Henderson's hoisting machine.

[4] 3. Again, the statute requires the inventor to "particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." Revised Stat. § 4888; 8 U. S. Comp. Stat. 1916, § 9432, p. 10214. When under this statute the inventor has done this, he has thereby disclaimed and dedicated to the public all other improvements and combinations apparent from his specification and claims that are not evasions of the combination or device he claims as his own, and has estopped himself as against those who subsequently use them from claiming or securing any monopoly thereof.

"The purpose of a claim in a patent is to notify the public of the extent of the monopoly secured to the inventor, and, while it is notice of his exclusive privileges, it is no less a notice, and a legal notice, upon which every one has a right to rely, that he disclaims, and dedicates to the public, any combination or improvement, * * * not a mere evasion of his own, which he has not there pointed out and distinctly claimed as his discovery or invention. Every one has the right to use every machine, combination, device, and improvement not claimed by the patentee, without molestation from him." Adams Electric R. Co. v. Lindell R. Co., 77 Fed. 432, 451, 23 C. C. A. 223, 242; Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344; Miller v. Brass Co., 104 U. S. 350, 352, 26 L. Ed. 783; McClain v. Ortmayer, 141 U. S. 419, 424, 12 Sup. Ct. 76, 35 L. Ed. 800; Dobson v. Cubley, 149 U. S. 117, 121, 13 Sup. Ct. 796, 37 L. Ed. 671; Stirrat v. Mfg. Co., 61 Fed. 980, 984, 10 C. C. A. 216, 220; McBride v. Kingman, 97 Fed. 217, 223, 38 C. C. A. 123, 129; Expanded Metal Co. v. Board of Education, 111 Fed. 395, 397, 398, 49 C. C. A. 406, 108; O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 347, 72 C. C. A. 304, 311.

In each of Claims 1 and 3 of his patent, Henderson specifically claimed a combination with other mechanical elements of the crossbeams or putlogs of a scaffold and one or more hoisting devices, and expressly specified that each hoisting device he claimed consisted of a U-shaped metal bar and a hoisting drum rotatably supported by the side members of that bar. He might have described and claimed a hoisting device consisting of the U-shaped bar and the drum rotatably supported on the side members thereof and a rectangular frame built up out of four metal rods and the complicated clutch mechanism made by Whitney. He did not do so. He confined his claim to a hoisting device consisting of his U-shaped frame bearing a drum ro-

tatably supported on the side members thereof and thereby disclaimed, dedicated to the public, and estopped himself from successfully asserting a claim of a monopoly of the manufacture, sale, or use in his combinations of a hoisting machine which has neither U-shaped bar nor drum supported by the side members thereof, but consists of the rectangular frame and clutch mechanism of the Little Wonder.

For the reasons which have now been sufficiently stated, the evidence in this case does not, in the opinion of the court, sustain the conclusion that the manufacture and sale of the Little Wonder, whether used edgewise or broadside to the wall of the building, constitutes contributory infringement of either of the combinations described in Claims 1 and 3 of the patent to Henderson. The interlocutory decree granting the injunction against the manufacture and sale of that machine by Mr. Whitney must therefore be reversed, and it is so ordered.