MOORE v. SCHAW et al.

(Circuit Court, N. D. California. August 25, 1902.)

No. 12,955.

1. PATENTS—INVENTION—UTILITY OF DEVICE.
    A combination of old elements into a machine for riveting the circumferential seam in pipe-line work which accomplishes several times as much work in a given time as any mechanism before in use, and requires less expensive labor to operate it, constitutes patentable invention.

2. SAME—ANTICIPATION—DEVICE RELATING TO DIFFERENT ART.
    A device relating to a different art, and not adapted to perform the functions of a patented machine, is not an anticipation of such machine.

3. SAME—INFRINGEMENT—HOLDING DEVICE FOR RIVETERS.
    The Moore patent, No. 622,251, for a holding device for riveting pipe, was not anticipated, and discloses patentable invention. Claims 5 and 6 also held infringed.

In Equity. Suit for infringement of letters patent No. 622,251, for a holding device for riveters, issued to Robert S. Moore, April 4, 1899. On final hearing.

N. A. Acker and Wm. F. Booth, for complainant.
John J. Scrivner and James L. Hopkins, for defendants.

MORROW, Circuit Judge. In this suit the complainant seeks to enjoin the defendants from making, using, or selling a holding device for riveters embracing the invention described in letters patent of the United States No. 622,251, granted to the complainant on April 4, 1899. The defendants are charged with infringing the rights of the

complainant accruing under said letters patent, to the complainant's damage. The defendants deny generally the charges of the bill of complaint, and as matter of defense aver that the complainant's patent is void for want of invention and by reason of anticipation, and that they have not infringed.

From the specifications of complainant's patent it appears that the device in question is intended for use in connection with the riveting of circumferential seams of pipe sections, tubes, or cylinders generally, and designed more especially for use in "line-pipe riveting,"—riveting the pipe when the pipe is in the ditch. The inventor says in the specification:

"Heretofore the riveting or joining together of pipe sections has been accomplished either by hand or by the use of heavy and complicated power devices, which head or upset the rivets by pressure exerted thereon. The objection to the former method of riveting is that the work is necessarily slow, and the rivets are not uniformly driven; and, again, it requires the employment of expert riveters, while by the use of the power mechanism the pressure upon the inner wall of the pipe is so great that unless heavy and strong external devices be employed to compensate for such pressure the pipe is liable to be damaged by the undue strain to which it is subjected. The main object of my invention is to provide a simple, comparatively light, and inexpensive holding device by means of which the pneumatic or other tool may be employed for the driving, heading, or upsetting of the hot or cold rivets during the riveting of the pipe sections; the device being so constructed that it may be easily and quickly moved along the line of piping, or from one section to another, and adjusted to the rivet holes of the sections in order that the riveter may be brought into alignment therewith, and be permitted free movement the entire circumference of the pipe sections. The holding device comprises an annular frame adapted to embrace the entire circumference or a part diameter of the pipe section, combined with a tool-holder either movable upon the frame, so as to traverse the circumference of the pipe, or it may be rigid therewith, and the frame movably secured around the pipe section. Hence, broadly stated, the invention may be said to comprise an 'annular frame' (by which expression I wish to be understood as meaning a frame embracing the entire circumference of the pipe section) either rigidly or movably connected or supported transversely to the length of the pipe line, in connection with a tool-holder mounted upon and carried by the frame. By the use of the present holding device I am not only enabled to reduce the cost incident to the riveting of pipe sections by dispensing with the necessity as to the employment of skilled or expert riveters, but all the riveting required to properly join or unite the pipe sections may be quickly performed while the pipe is in position within the trench, and the rivets driven at the rate of about fifteen hundred or more per day, and more perfectly than they can be driven by hand, as is usual in this class of work. As the rivets may be driven at any distance from the end of the pipe, it allows all the pipe sections to be assembled and temporarily joined in the ditch or trench, and each section permanently riveted as the work progresses."

The device is particularly described in the following specification, with references to the drawings accompanying:

"The holding device comprises a frame preferably consisting of two plates or rings, B B¹, Figs. 1 and 2, which are composed of distinct sections joined together by bolts, a. These plates or rings are designed to loosely embrace or encompass the pipe sections, one resting upon each section of the pipe a short distance from the other.

"The ring sections of the annular frame that encircle the pipe sections when in place are fastened or held together by means of the lock or cross bars, B², which bars are connected by hinged joint, a¹, to one ring of the frame, and secured to the other when thrown over by means of the clips, a², hinged to said ring, which clips fit over the free end of the cross-bars, B², Fig. 2. Each bar is formed with a depending lug, b, which engages the

inner face of one of the rings of the annular frame, so as to hold the frame rings a given distance apart.

"Inasmuch as the end of one pipe section fits within that of the other section an even or unbroken surface is impossible. Consequently it is required that means be provided to adjust one frame section to the other, so as to secure horizontal alignment and to hold the rings against displacement after being properly aligned to each other and to the circumferential rivet holes of the pipe sections. To accomplish this, each section of the frame is formed with a downwardly extending bracket or support, 1, through which works a screw-threaded bolt, 2, carrying at its lower end a foot, 3. This foot rests upon the pipe section of the respective rings, and either ring is raised or lowered by simply turning the hand-wheel, 4, so as to move the screw-rod inward or outward. This form of adjusting mechanism is preferred where the frame is a rigid one, owing to its simplicity, although any other suitable adjusting device may be employed for this purpose.

"By preference the annular frame is formed of channel iron, and between the rings composing the frame is fitted to move the slide tool-holding block, C, which block is formed with the side grooves, $b^1$, so the edges thereof embrace the upper and lower faces of the rings, $B B^1$, Figs. 2, 3, and 9. This slide-block is provided with a vertical central opening, $b^3$, within which is fitted the cylinder, $C^1$, carrying the pneumatic hammer or riveter, $C^2$, which when the annular frame is properly adjusted upon the pipe sections is in line with or centered to the rivet holes of the pipe. In order to permit free circumferential movement of the slide holding-block carrying the riveter, the same is connected by tie-rods, $D D^1$, to the sleeves, $d d^1$, which sleeves in turn are connected to the sleeve, $d^2$, by tie-rods, $D^2 D^3$. Through sleeve, $d$, is fitted axle, $e$, carrying rolls, $e^1$, and within sleeve, $d^1$, works axle, $e^2$, carrying rolls, $e^3$, while through sleeve, $d^2$, works axle, $f$, carrying the larger rolls, E. Each of the rollers, $e^1$, $e^3$, and E. works upon the periphery of the rings composing the annular frame, and while answering to hold the sliding tool-holding block in position also assists in moving the same around the frame. Owing to the weight of the riveter, it is necessary that a counterpoise or counterweight be employed to assist the operator in holding the slide-block and riveter in proper position. This is accomplished by making the rolls, E, of such size that the weight thereof will approximately equalize that of the slide-block and riveting-tool combined. Hence only slight pressure is necessary to enable the operator to move the slide-block the entire circumference of the pipe sections, as required, to head or upset the rivets in order to rivet-joint the pipe sections.

"When riveting is done from the outside, it is necessary that the workman inside the pipe be provided with an anvil or take-hold for the rivet, so as to hold the rivet in place while being headed or upset by the riveter. In the present case I make employment of an ordinary pneumatic holder or take-hold, $E^1$, which works in the usual cylinder, $E^2$, mounted upon the support, $E^3$. This support is provided at its opposite end with a head, $f^1$, which rests against the inner wall of the pipe at a point opposite to the rivet being headed or upset. By means of this support the workman is relieved of all strain incident to the holding of the rivet while being headed by the riveter. If the riveting is to be done from the inside of the pipe, the position of the holder or take-hold and riveter will be reversed; that is, the riveter will be attached to the support, $E^3$, and the holder or take-hold fitted within the slide-block or tool-holder, C. It is thus obvious that it is immaterial whether the riveting be done from the outside or inside of the pipe.

"The air necessary to operate the riveter and the rivet-holder or take-hold, which serves as an anvil, is conveyed from an air-compressing apparatus located at point convenient to the line of work by means of the flexible pipes, $F F^1$, the inlet of air to the respective tools being controlled by the cocks, $f^2 f^3$.

"Inasmuch as the pneumatic riveter and rivet-holding tool are well known and their operation and construction perfectly understood by those familiar with such tools, a specific description thereof is believed unnecessary in the present application, as they form no part of my invention, which relates to devices designed to permit the use of such tools in connection with the work of riveting.

"Rigidity is secured at the bottom of the rings composing the annular frame in order to prevent spreading by riveting to the depending brackets, 1, of opposing ring sections a cross-tie plate, g, Figs. 1 and 3. These cross-tie plates not only hold the rings of the frame an equidistance apart, but give firmness to the annular frame at its base, while the hinged lock bars or rods, B², secure the same at the top. Each cross-tie plate is provided with a central opening, g¹, through which fits a plug, g², which plug is used to assist in aligning the frame or centering the same to the rivet holes.

"By reference to Figs. 4, 5, and 6 a modification of the holding device is illustrated. In this case the annular frame is composed of two flexible bands or cinctures, F², preferably composed of a series of links carrying rolls, f²¹. Each band or chain encircles the pipe sections, and the free end of each is connected to a tool-holding block, F³, by means of bands or rods, F⁴. This constitutes a flexible frame, which is adapted to be moved the circumference of the pipe sections as the work of riveting progresses, to this extent differing from the frame set forth in Fig. 1 of the drawings, which is a fixed one, and upon which the tool-holding block moves. Where the frame is a rigid one, the slack of the slide tool-holding block may be compensated for by means of the turn-bolt, G, introduced in the tie-rod, D¹, Fig. 1, while in case chains be employed the tension may be regulated by taking out or putting in a link or by any suitable tension regulating device.

"Fig. 4 illustrates the riveter, held in the slide-block in order to rivet outside of the pipe, while in Fig. 6 the riveter is illustrated inside of the pipe and the holder or take-hold as being carried by the tool-holder or slideblock."

The operation of the device is described as follows:

"In the operation of riveting or joining the ends of pipe sections when the work is done from the outside, an operator inside of the pipe receives a hot rivet handed him from the outside through an opening formed in the pipe. The rivet is then placed in the take-hold, and the air-inlet cock opened, so that the take-hold is forced outward, and the hot rivet k firmly held in the rivet-hold of the pipe sections. After the rivet is in place the operator on the outside opens the air-inlet cock of the riveter or riveting tool, so as to operate the hammer, and cause the heading or upsetting of the rivet, which projects through the rivet hole. Upon the completion of the riveting or heading of one rivet, the operator inside the pipe receives another rivet, which is placed and held in the next rivet hole, and the operator upon the outside moves or advances the slide-block or tool-holder to place the riveting tool over such hole. The operation of heading or riveting is the same as that just described, which continues the entire circumference of the pipe, or until all the rivet holes of the circumferential seam have been closed. As the tool-holder approaches one of the lock-bars, the same is released to permit the holder to move past the bar, after which the same is refastened.

"Inasmuch as the present invention is designed for use in connection with the riveting of the circumferential seam of pipe section and not the longitudinal seam, it is not necessary that space be left below and around the pipe its entire length in order to fit the apparatus thereto, but only sufficient room or space be left at the end of the section to permit adjustment of the parts· and allow the outside operator to pass around the pipe to guide and advance the riveting tool as the work progresses. Upon the completion of the riveting of one circumferential seam the apparatus is taken apart and carried forward and adjusted around the pipe section for the riveting of the next circumferential seam, the operator inside of the pipe likewise moving forward."

The defendants defend this action upon the usual grounds that the combination described in the patent was merely the product of mechanical skill, and not the result of the exercise of the inventive faculty, and that they have not used the combination. The claims of the patent sued upon in this case are known in law as "combination claims." A combination claim is one which takes various mechanical elements and joins them together in such a way as to make an operative mechanism, the action of which is produced by the joint action of all the mechanical elements in the combination. The letters patent are prima facie evidence of the novelty of the invention. The invention described in the patent in suit relates to means whereby the work of pipe-line riveting is facilitated; to means whereby the hand riveting formerly used for such work is dispensed with, and the employment of skilled or expert riveters in connection with such work rendered unnecessary. The complainant contends that the invention was the result of successfully solving the problem of providing a device for use in connection with the work of pipe-line riveting, so constructed as to obtain certain results. These results were: To reduce the cost incident to the work of pipe-line riveting; to permit the work of riveting a circumferential seam to be accomplished mechanically instead of by hand, as formerly; to dispense with the employment of expert riveters in connection with the riveting of the circumferential seam in pipe-line work; to enable the rivets to be uniformly driven or headed; and to facilitate the work of riveting the circumferential seam of pipe-line work. All of these results appear to have been accomplished by

the complainant's device, and in the art of riveting it is certainly a new and useful result to produce a device which will accomplish several times as much work in a given time as any mechanism before in use, and requiring less expensive labor to operate it; and the adaptation of old elements to this new use required, in my judgment, the exercise of the inventive faculty.

In Willcox & Gibbs Sewing Mach. Co. v. Merrow Mach. Co., 35 C. C. A. 269, 93 Fed. 206, the patents declared upon were for devices in sewing machines. The circuit court there found from the proofs in the case that prior to complainant's machine the practical work of such machines (over seam machines) was not more than 1,000 stitches per minute, while by complainant's machine more than 2,000 stitches could be made. The circuit court of appeals for the Second circu commenting upon these proofs, said, at page 272, 35 C. C. A., and page 209, 93 Fed.:

"When the increase of speed is so great as it appears to be in this instance, and that, too, in an art where increase of speed (efficiency being preserved) is of such practical importance, we are disposed to consider the changes in parts and arrangement of parts as showing meritorious invention."

A new combination of old elements by which an old result is obtained in a more facile, economical, and efficient way may be protected by patent. Thomson v. Bank, 3 C. C. A. 518, 53 Fed. 250, 252; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 45 C. C. A. 544, 106 Fed. 693, 707; Kinloch Tel. Co. v. Western Electric Co., 51 C. C. A. 369, 113 Fed. 659, 665; Seymour v. Osborne, 11 Wall. 516, 542, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39.

The claim of anticipation is based upon prior patents, and is met by the objection that the inventions approaching more nearly to the device described in the claims of the patent involved in this suit relate to a different art. For example, the patent granted to Daniel O'Neil, dated February 9, 1895, numbered 534,572, is for an apparatus for caulking joints of pipe and mains, and has no relation to the art of pipe-line riveting, the invention now under consideration. The patents introduced relating to pipe riveting relate also to a different method of practicing the art. "A machine or combination which is not designed by its maker, nor actually used, nor apparently adapted to perform the functions of a patented machine or combination, but which is discovered in a remote art, and was used under radically different conditions to perform another function, neither anticipates nor limits the scope of the patent." Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 18, 12 Sup. Ct. 601, 36 L. Ed. 327; Topliff v. Topliff, 145 U. S. 166, 12 Sup. Ct. 825, 36 L. Ed. 658; Potts & Co. v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Westinghouse Air-Brake Co. v. New York Air-Brake Co. (C. C.) 59 Fed. 581, 590. Under these authorities, it is clear that the complainant's device amounts to invention, and is entitled to the protection of the law.

With respect to the defense that the defendants have not used the combination, it is contended by the complainant that the device in use by the defendants infringes claims 5 and 6 of his patent. Those claims read as follows:

"(5) The combination with a pipe-riveter of an annular frame composed of indepedent members, each member of which comprises a series of sections united together, and of a tool-holding block secured to and carried by said frame, said block adapted to be moved over the holes to be riveted so as to place the tool carried thereby in vertical alignment therewith.

"(6) In a holding device for use in connection with riveting the circumferential seam of pipe sections, the combination with the rigid annular frame, of devices for attaching the same to the pipe to be riveted, of a tool-holding block secured on and carried by the frame, said block adapted to be moved around the pipe seam, and of a tool-supporter located inside the pipe."

As it is not a particular principle in mechanics or the discovery of new elements that comprises the invention herein, but rather the arrangement of old elements, whereby means is provided for effecting a much more useful result than before produced in the same line of work, an infringing device must necessarily contain the same arrangement of parts, or so nearly the same, as to be practically identical in operation and result with the original device. A safe rule for guidance in such cases is that a device which would anticipate if earlier, infringes if later.

The device used by the defendants, which is charged to infringe that of the complainant, is illustrated by the following drawing:

This drawing shows an annular frame, consisting of two members, B B¹, which lie one on each side of the circumferential line of rivet holes. These members are independent, and composed of independent sections. They are united by cross-plates, B², and by the tool-holding block, C, and when so united form a rigid frame. The tool-holding block is secured to the annular frame, and carried by it around the pipe, thereby enabling the tool-holding block to be placed in vertical alignment with the holes to be riveted, successively. There also appears a tool-supporter located inside the pipe. All the elements of claims 5 and 6 of complainant's patent are thus present, and in practically the same arrangement for operation, except that the illustration does not show any devices for attaching the annular frame to the pipe to be riveted. From the testimony, however, it appears that the hinge opposite the take-hold or holding-on device, together with the bolts in the tool-holding block, are used for attaching the machine to the pipe. It appears to the court that the defendants' device is not only functionally the same as that of the complainant, but that it reaches the result by substantially the same or similar means, and, as the invention of the complainant is contained in the means devised for operating the riveting tools, the use of such means by others is infringement. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 569, 18 Sup. Ct. 707, 42 L. Ed. 1136.

For the reasons here stated, let a decree be entered in favor of the complainant.