## MAUNULA v. SUNELL.

(Circuit Court, D. Oregon. August 12, 1907.)

No. 3,046.

1. PATENTS—INVENTION AND INFRINGEMENT—NET LEADER.

The Haataja patent No. 587.308 for a net leader covers a new combination of old elements, which produces an old result in a more facile, economical, and efficient way, and discloses patentable invention as contradistinguished from mechanical skill, also *held* infringed.

2. SAME—EVIDENCE OF INVENTION.

The fact that there existed a mechanical requirement for a machine to do a certain thing for a long time which was first supplied by the machine of a patent is highly evidentiary of inventive application and genius.

3. SAME—INFRINGEMENT—USE OF EQUIVALENT PARTS.

The inventor of a combination is himself entitled to apply and adapt the equivalents of the parts to his own use, and his patent covers any alterations which are formal and adapted to perform the same function in substantially the same manner as fully and effectively as the parts described.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 386.]

4 SAME—EQUIVALENTS—IMPROVEMENT PATENT.

If a patented improvement is of great utility and denotes a marked and signal advance in the state of the art, although not entitled to be denominated a pioneer, the law accords to the inventor a larger range of equivalents than it does where the improvement is of lesser or minor importance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 386.]

**5. SAME—CONSTRUCTION OF CLAIMS—ERROR IN DESCRIPTION.**

Under the rule that language of a patent should be so construed as to save rather than destroy it, a claim in a patent of "rotatably mounted bars * * * substantially as described" as an element of a combination is not void because the specification and drawings show a rotatable and a fixed bar, there being no doubt as to the thing intended.

In Equity. Suit for infringement of letters patent No. 587,308 for a net leader granted to Epraham Haataja August 3, 1897. On final hearing.

On March 18, 1884, Erik Maunula, the plaintiff, was granted letters patent upon a machine for casting leads upon fish-net lines. In its construction it consisted of an extended arm attached by one end to a table. On the under side of the arm was a series of half-molds; on the upper side a groove and holes extending through into the cavities formed by the half-molds. Within the groove was a slide, having a trough along the top and holes drilled through to correspond with the holes in the groove. These holes were chamfered from the top so as to form sharp angles with the lower edge of the slide. An extension of the slide formed a handle for convenient manipulation. Attached to the table underneath by a pivot was a reel-shaft extending out even with the arm above. Upon this shaft was constructed a reel with four arms, and upon the outer sides of two of these arms was formed a series of half-molds corresponding with the half-molds upon the stationary arm; the reel being so adapted that these half-molds were brought into complement with those upon the extended arm, thus forming when in position a series of complete molds. The other two arms of the reel were adjustable so that they could be lengthened or shortened as desired. The cord to be leaded was wound around the reel, passing through the half-molds upon the two arms thereof. One mold-arm was then brought into juxtaposition with the stationary arm extending from the top of the table, and by means of certain devices the two half-mold arms were clamped securely together. When in this position the molten lead was poured into the groove in the slide, and, running through the apertures into the molds, formed sinkers around the cord for weighting it down. By drawing the slide outwardly the metal that remained in the holes was cut off. The clamps were then released, and, the reel being rotated, the opposite arm was adjusted with the one extending above the table in the same manner, and the cord leaded as before. When this was done, a new length of cord was wound upon the reel, and the same process repeated, and so on. The distance between the leads was regulated by extending or shortening the other two arms of the reel, and thus was obtained uniformity in leading the cord.

On August 3, 1897, Epraham Haataja secured letters patent for a new and useful improvement on net-leaders. The device consists of a base rectangular in form, in the center of which is secured a mold-block containing in the top thereof a series of half-molds, elliptical in form. Attached to the mold-block on either side are removable closure-strips, provided with openings corresponding with the half-molds. On the end of this mold-block is hinged a similar block, having a series of half-molds underneath complementary to those contained in the stationary block, provided with corresponding closure-strips, so that when the blocks are brought together they form a series of complete molds for casting leads upon the cord. The closure-strips are removable, with a view to regulating the size of aperture in the molds to suit the size of the cord desired to be leaded. Along the top of the upper or hinged mold-block is a groove, concave in form, containing holes entering the half-molds from the tops thereof. Within this groove is arranged a slide, containing a trough, through which there are apertures corresponding with those in the groove; the apertures being chamfered from above so as to form a sharp cutting edge at the bottom of the trough. Attached to the slide at the outer end is a crank, provided with a handle, by means of which the slide is rotated with reference to the groove; the crank being so contrived as to limit the range of rotation. Guides are attached to the base at either end of the mold-block and at right angles thereto, extending upon both sides, and upon these guides

are annexed bars parallel with the mold-block, so provided with slides as to be movable upon the guides, by means whereof the distance between the mold-blocks and bars is regulated. The slides are provided with thumbscrews for making the bars fast upon the guides. The bars are provided with pins, curved outwardly, the pins upon each bar corresponding to half the number of the molds in the blocks; one of the bars being rotatably and the other fixedly attached. The rotatable bar is provided with a handle, standing at right angles with it, which is secured by a latch-hook to render the bar stationary as desired. The process of leading the line or cord is to attach it to a pin on one of the bars, pass it through the half-mold in the stationary mold-block to and around a pin on the opposite bar, and through another half-mold, and so on. When all the molds are thus engaged, the upper or hinged mold-block is closed down upon the lower and clamped at the end, and the molding is done as in the Maunula machine. The leads are cut, however, by a rotation of the trough slide by means of the crank, in place of a longitudinal movement by drawing the slide outward. Maunula became the owner by assignment of these letters patent, and of later years has been manufacturing and selling machines differing from the one described by the letters patent in particular as follows: The mold-blocks are so constructed as to form perfect molds without the closure-strips. The upper block is attached to the lower at the end by a stem, consisting of a round bolt extending through the lower block; the upper block being made to hinge on the stem, so that such block may be raised at the outer end by means of the hinge, and swung around laterally by means of the bolt, and laid out of the way while arranging the cord through the molds and detaching it again. The guides consist of thin pieces of iron, those at one end being notched from the top at short intervals, and those at the other containing holes corresponding with the notches. The bars are rotatably constructed, with pin extensions upon either end, one of which is adjusted in a hole of the guide upon one side and the other in a notch upon the other side; such bars being provided with handles, which in turn are secured by latch-hooks. The upper mold-block is provided with a groove and a slide, with a trough similar to that in the Maunula machine, but with an additional contrivance at the hinged end in the way of a lever for forcing out the slide in cutting the lead. The interstices between the leads upon the cord are regulated by moving the bars farther from or nearer the mold-blocks, by means of the holes and notches in the guide.

The pleadings and proof show that the defendant leased one of these machines from the plaintiff, and while having it in his possession made a model therefrom, and had constructed a machine of identical pattern, save that the pins in the bars used for arranging the cord with reference to the molds are curved backwards, paralleling the bars instead of lateral thereto, and claims the right to use such machine and to manufacture others, and to put them upon the market for profit. The purpose of this suit is to enjoin the defendant from manufacturing and using such machines, on the ground that they infringe the Haataja patent.

Fulton Bros., for plaintiff.
Williams, Wood & Linthicum and T. J. Geisler, for defendant.

WOLVERTON, District Judge (after stating the facts as above). The defendant has interposed four defenses to the bill of complaint, which, briefly stated, are as follows: First, that the Maunula patent anticipates the Haataja invention, and therefore that the patent for the latter is void; second, that defendant's machine does not comprise all the elements of the combination as specified in the alleged Haataja letters patent, and therefore that defendant does not infringe such letters patent; third, that the third claim of the Haataja letters patent sets forth a subcombination of parts not supported by anything contained in the specifications; and, fourth, that defendant's machine does not

infringe the Haataja letters patent, because it comprises an element or ingredient not common to the latter.

I think it may be safely premised that the Maunula machine exhibited novelty and invention. This becomes at once apparent by a consideration of the state of the art prior to the time when the invention was evolved. As disclosed by the testimony, the manner of leading cord prior to that time was to wrap the lead about it and make it secure by hand, no other method being known to the art. Were it not, therefore, for this invention, the patent for which has become extinct because of its existence for more than 17 years, there could be no question that the Haataja patent possesses the quality of novelty. So we come naturally to the question whether the Maunula letters patent anticipate the Haataja machine.

The claim of the plaintiff is that the Haataja letters patent cover a combination of old elements, producing an old result, but in a more facile, economical, and efficient way; therefore, that the device is new, and the result of inventive genius and power. If the machine is of this character, it was patentable. The rule is comprehensively stated by Sanborn, Circuit Judge, sitting in the Court of Appeals, Eighth Circuit, as follows:

"The second claim of the first patent to Hien is for a combination of old mechanical elements in a new way. It is not for new elements, but for a new method of combining old elements; and a new combination of old elements, whereby a new and useful result is produced, or an old result is attained in a more facile, economical, and efficient way, may be protected by patent as securely as a new machine or composition of matter." National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 706, 45 C. C. A. 544.

And recognized by Morrow, Circuit Judge, in the case of Moore v. Schaw (C. C.) 118 Fed. 602, 606, which affords apt illustration as well:

"All of these results appear to have been accomplished by the complainant's device, and in the art of riveting it is certainly a new and useful result to produce a device which will accomplish several times as much work in a given time as any mechanism before in use, and requiring less expensive labor to operate it; and the adaptation of old elements to this new use required, in my judgment, the exercise of the inventive faculty."

See, also, Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Rees v. Gould, 15 Wall. 187, 21 L. Ed. 39; Ide v. Trorlicht, Duncker & Renard Carpet Co., 115 Fed. 137, 53 C. C. A. 341.

That the combination is new is manifest from the different arrangement of the mold-blocks, the substitution of the guides and bars for the reel, and the wide dissimilarity in the manner of operating the machine. But it is urged that this is not the result of inventive genius, but of mechanical skill only. It is unquestioned that the Haataja machine is of superior utility to that of the Maunula patent. The latter was cumbersome, slow, and tedious of operation. The Haataja machine may be operated with much greater facility, and is productive of largely increased results. It is a fact in evidence that the Maunula machine was scarcely used at all, while, upon the production of the present invention, its utility was at once appreciated by the public, and a demand for its manufacture became importunate. While the new

arrangement may seem simple, and a look at it from the retrospective standpoint might be suggestive that it is the result of the commonest kind of mechanical skill, yet the fact that there existed a mechanical requirement for such a utility for a long time, and that it was not discovered or applied until a later period, is highly evidentiary of inventive application and genius. So, bearing in mind that the letters patent prima facie establish inventive genius, considered in connection with the historical growth and development of the alleged improvement, I conclude that the combination is the result of inventive genius as contradistinguished from mechanical skill applied to the different arrangement of old elements. See Gandy v. Main Belt'ng Company, 143 U. S. 587, 594, 12 Sup. Ct. 598, 36 L. Ed. 272; Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558; Star Brass Works v. General Electric Co., 111 Fed. 398, 49 C. C. A. 409.

In avoidance of this conclusion, defendant insists that his machine, that is, the one constructed by him and inveighed against by the bill of complaint, does not impinge upon the Haataja patent because it does not combine all of the elements of the patented combination. The most important of the elements which it is claimed are not combined in his machine are the closure-strips, removably attached to the mold-blocks, the manner of the adaptation of the cut-off, and the arrangement and adaptability of the guides and pin-bars. Other alleged dissimilar ingredients are enumerated, but these are sufficient for a determination of the principle governing all.

Mechanical equivalents are not patentable, and their employment in combination with other elements of the patented device does not avoid infringement. A mechanical equivalent is defined by Mr. Walker, in his work on Patents, fourth edition, section 354, "as a thing which performs the same function, and performs that function in substantially the same manner, as the thing of which it is alleged to be an equivalent."

Applying the definition, it is said in National Hollow B. B. Co. v. Interchangeable B. B. Co., supra:

"Mere changes of the form of a device or of some of the mechanical elements of a combination secured by patent will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention."

And, as illustrative, Circuit Judge Townsend applies the principle in New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 Fed. 859, 864, as follows:

"It is true that in the patent in suit the base plate is stationary, while in the defendant's device it is caused to rotate, and that the levers are differently arranged in the two devices. But in each case the different parts operate to perform the same functions in substantially the same way, and the alleged differences of operation are merely such colorable and formal ones as result from the use of mechanical equivalents."

To the same purpose see National Typographic Co. v. New York Typograph Co. (C. C.) 46 Fed. 114, Columbus Watch Co. v. Robbins, 64 Fed. 384, 12 C. C. A. 174, Ide v. Trorlicht, Duncker & Renard

Carpet Co., 115 Fed. 137, 149, 53 C. C. A. 341, and Shelby Steel Tube Co. v. Delaware Seamless Tube Co. (C. C.) 151 Fed. 64.

The principle thus stated and elaborated has pertinent application as it respects all the ingredients or elements enumerated above in their relation to the Haataja patent. The function of the closure-strips is to form the apertures through which the cord is to pass when laid through the molds, which apertures are to be of size adapted to press closely upon the cord so as to prevent the escape of the molten lead. Now, the molds devised in the mold-blocks of defendant's machine are provided with like apertures (but contained in the solid pieces), which press the cord and prevent escape in identically the same way. So that the function to be performed is the same as it respects both devices, and it is performed in substantially the same manner by compressing the cord and thereby forming a perfect mold. True, the closure-strips are removable, so that others may be substituted with apertures adaptable to the size of the cord to be leaded; but these are of little utility, as experience has demonstrated that different sized molds are required for different sized cord, because the heavier cord needs the heavier sinker to carry it down. The closure-strips, therefore, in combination with the mold-blocks, perform identically the same function as the mold-blocks constructed by the defendant for his machine, which is an alleged infringement upon the Haataja patent; and, vice versa, the mold-blocks of defendant's machine are a mechanical equivalent for the molds secured by the Haataja patent. It is a rule in patent law that the mere making of a device in one piece formerly constructed in two parts mechanically attached is not invention. Standard Caster & Wheel Co. v. Caster Socket Co., 113 Fed. 162, 51 C. C. A. 109. So the court says, in Howard v. Detroit Stove Works, 150 U. S. 164, 170, 14 Sup. Ct. 68, 70, 37 L. Ed. 1039, 1041: "It involves no invention to cast in one piece an article which has formerly been cast in two pieces and put together."

Replying to this application of the principle, counsel for defendant say that then the Haataja patent as it respects this device was anticipated by the Maunula patent, and I think they are right. But the argument overlooks the theory, which is well founded, that the Haataja patent is a combination of old elements producing more efficient and expeditious results. The inventor of a combination is himself entitled to apply and adapt the equivalents for his own use. Indeed, his patent covers the equivalents as fully and effectively as it does the invention. Thus, where the alterations are formal but are adapted to perform the same function, in substantially the same manner, the patentee is guaranteed the exclusive right to their employment for his sole benefit, and, if any one assumes to utilize such alterations in combination with the patentee's combination, he becomes an infringer as certainly as if he had adopted the entire patented device. The change or new adaptation must be one of substance, and not a mere form, to avoid infringement. In other words, the substitute for the omitted ingredient must be a new one, or must be adapted to the performance of a substantially different function, or else it will inure to the right of the patentee. Rees v. Gould, supra, is a very instructive decision upon

the subject, and covers almost the entire range of the present controversy.

What has been said as to the closure-strips applies in the main to the cut-off and the new arrangement of the guides and pin-bars. They perform identically the same functions as the old, and in practically the same manner. Instead of cutting the leads by rotary action, the defendant's machine cuts them by longitudinal process; but they are cut, nevertheless, at the same juncture, and the result is the severance of the neck from the molded product, all without a particle of functional difference. So with the guides and the pin-bars. The latter are adjusted upon the former by means of holes and notches therein, in place of the slides, and both pin-bars are rotary; but they perform no different function whatever, and they perform the function in substantially the same way. The purpose of the rotary action in the pin-bars is to secure and release the cord with facility and bring about uniformity in the product. But a rotary motion in one bar while the other remains stationary answers the same purpose, so that the same function is performed whether one or both are rotatable. So I conclude that as to these features, and others pointed out but of similar character, they are but mechanical equivalents, and the adaptation of them by the defendant constitutes an infringement of the Haataja patent, now owned and controlled by the plaintiff.

I have not overlooked the contention of defendant that the Haataja patent evidences an improvement and not a pioneer in the way of invention, and therefore that a strict construction should be applied in the ascertainment of equivalents, and that no device will impinge unless it is practically of identical construction and operation. As it pertains to pioneer inventions, a broad and liberal rule obtains in the ascertainment of what contrivances and devices are to be deemed equivalents, which is for the adequate protection of the inventor who has successfully employed his faculties in producing a novel and, at the same time, a useful piece of mechanism. Not so with a mere improvement which, added to another person's invention, performs practically the same function as the prior device. In such a case, the rule as to equivalents is greatly narrowed, and to infringe means to produce and adapt nearly the exact device claimed for the improvement. But between these two rules there is a range of flexibility that has relation to the state of the art and the vitality and importance of the advancement made therein by the improvement. If the improvement is of great utility and denotes a marked and signal advance in the state of the art, although not entitled to be denominated a pioneer, the law accords to the inventor a larger latitude of equivalents than it does where the improvement is of lesser or minor importance. Each case, therefore, is largely to be determined by its own peculiar features; it being of paramount importance that the inventor be protected against encroachment upon the output of his genius, according as his merits shall suggest. Miller v. Eagle Manufacturing Co., 151 U. S. 186, 207, 14 Sup. Ct. 310, 38 L. Ed. 121; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 561, 18 Sup. Ct. 707, 42 L. Ed. 1136; Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 406,

et seq., 25 Sup. Ct. 697, 49 L. Ed. 1100; National Hollow B. B. Co. v. Interchangeable B. B. Co., supra. The Haataja combination, to my mind, is of far greater account than a mere improvement, and the inventor should be accorded a larger protection by reason thereof.

In this relation should be considered the further objection which is the basis of defendant's fourth defense. It is insisted that, by reason of the setting of the pins in relation to the pin-bars in defendant's machine, being curved in line with the bars rather than laterally, they are suited to a more ready release of the cord without rotation of the bars. But this partakes more of the application of genius to avoid infringement than to invent or construct something really new or novel. The functional difference between the two contrivances is not appreciable.

The third objection relates to claim 3 as contained in the Haataja letters patent, which reads as follows:

"In a net-leader, the combination with a series of molds, of rotatably-mounted bars provided with pins, adjustable relative to said molds, substantially as described.".

The specific objection is that it does not accurately describe the device, as it speaks of rotatably-mounted bars, when by reference to the specifications and drawings but one bar is so mounted. The rule seems to be that the claims are construed in connection with the drawings and specifications, and assuredly would this be so where reference thereto is made in the claim by the use of the qualifying words "substantially as described." There was possibly a mistake in drafting the claim, as but one bar was designed to be rotatably-mounted, but by reference to the drawings and specifications there can be no doubt as to the patentee's intention, and I am not inclined to permit a mere technicality to defeat the patent. If the word "rotatably" had been omitted, the claim would have been technically sufficient, no doubt; but, when reference is made to the description of the invention, there can be no cavil as to what was designed to be claimed, and the claim is not rendered void by the discrepancy. Further than this, specific statements in subsequently enumerated claims show that one of such bars is fixedly attached while the other is rotatably attached. By reference to the nine claims exhibited by the letters patent it will be seen that each particular element of the patentee's device is claimed separately and in combination; and it is made perfectly clear from a reading of the claims alone, without reference to the description, that the device consists, among other elements, of one fixedly and one rotatably attached bar, not two rotatably attached bars.

Two principles tersely stated by Sanborn, Circuit Judge, in National Hollow B. B. Co. v. Interchangeable B. B. Co., supra, are applicable here:

"When the intention of the parties is manifest, it should control, regardless of inapt expressions and technical rules. In cases of doubtful validity or of ambiguous terms, that construction should be adopted which sustains and vitalizes the agreement, rather than that which destroys or paralyzes it."

And so Coxe, District Judge, pertinently says, in Gaisman v. Gallert (C. C.) 105 Fed. 955, 958:

"When forced to choose between a construction which destroys and one that saves the patent the court should not hesitate to adopt the latter."

Thus it is plain that, if this were a case of doubtful intendment as it respects the claim, that construction should be adopted which would lend support to the patent. However, looking through all the claims, the description, and the drawings and specifications, the intention of the claimant becomes perfectly manifest. So that the patent is not rendered invalid by the incongruity of statement in claim 3.

It results from these considerations that the injunction against infringement should be made permanent as prayed, and a decree will be entered accordingly.